IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DEREK DEGROOT,

                Plaintiff,                      OPINION AND ORDER

v.

                                                20-cv -657-wmc

KEVIN CARR, MARIO CANZIANI, and
HSU MANAGER MS. BARKER,

                Defendants.

*Pro se* plaintiff Derek DeGroot, who currently is incarcerated at Stanley Correctional Institution ("Stanley"), brings this action under 42 U.S.C. § 1983, against five Wisconsin Department of Corrections ("DOC") officials, claiming that their policies and practices have violated his constitutional rights to access the courts and aid other inmates with their legal matters. DeGroot's amended complaint and supplement (dkt. ##12, 18) are now before the court for screening pursuant to 28 U.S.C. § 1915A, and DeGroot has also filed a motion for immediate preliminary injunctive relief (dkt. #27). After review, the court concludes that plaintiff's complaint is subject to dismissal for failure to satisfy the minimal pleading requirements of Federal Rule of Civil Procedure 8, and that his motion must be denied for that reason. However, before dismissing this lawsuit, the court will give plaintiff an opportunity to file an amended complaint that corrects the deficiencies described below.

ALLEGATIONS OF FACT[1]

Plaintiff Derek DeGroot seeks to proceed against DOC Secretary Kevin A. Carr and Columbia employees Mario Canziani, the deputy warden; Gerald Van Ert, the Education Director; Cheryl Webster, the Program Director; and Brenda Peterson, the Librarian. DeGroot claims that these defendants denied him reasonable and equal access to legal resources, which has impacted his ability to litigate his legal matter and to aid other prisoners with their matters.

More specifically, on March 11, 2020, DeGroot submitted information requests regarding the lack of law time and resources, in particular citing Webster's denial of his request for a formatting computer. Although DeGroot filed an inmate complaint about this issue, Canziani affirmed Webster's denial. DeGroot then sent a letter to Carr, complaining about those decisions, and attaching a motion that he intended to file in a state court proceeding to request an extension of time. On or around May 20, 2020, DeGroot received a form letter from Carr, but DeGroot claims that the letter came from within Stanley, suggesting that Carr did not actually respond himself. On April 13, 2020, Van Ert issued a memorandum reducing flash drive use from approximately 11 hours per week to a maximum of six.

On June 22, 2020, DeGroot was required to provide copies of his personal legal documents to Van Ert to be able to access his flash drive and law time. Then, on June 24,

---

[1] Courts must read allegations in *pro se* complaints generously, resolving ambiguities and drawing reasonable inferences in plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). The court assumes the facts above based on the allegations made in plaintiff's amended complaint and supplement.

2020, DeGroot drafted a letter related to his petition for certiorari review. Van Ert initially told DeGroot he was not allowed to type and print letters. However, because DeGroot explained it was related to his petition, Van Ert permitted him to print it.

On July 6, 2020, DeGroot refused to undergo a mandatory COVID-19 test, and prison officials placed him in a 14-day quarantine for failing to comply with that requirement. DeGroot claims that he was barred from all legal resources and that Canziani was responsible for the quarantine. On July 20, 2020, DeGroot refused to follow a mandatory mask policy, and he was sent to segregation, also per Canziani. According to DeGroot, his window for submitting a petition for a writ of certiorari closed during his time in segregation, although it appears, from the allegations that follow, that DeGroot was still pursuing an appeal after that time.

On July 31, 2020, while DeGroot was on Temporary Lock-Up ("TLU") status, DeGroot wrote to defendant Peterson asking for his flash drive. Peterson denied this request. On August 5, 2020, DeGroot asked for extra law time because he wished to object to the state's motion to extend its deadline to file its brief in DeGroot's appeal. Van Ert denied the request.

On September 15, 2020, DeGroot asked to use the library computer to edit his appellate reply brief. Peterson initially refused, but then relented, although she was antagonistic during their interaction.

3

OPINION

Plaintiff seeks to proceed on a First Amendment access to courts and Fourteenth Amendment equal protection clause claims against defendants. However, his allegations fail to meet the minimal pleading requirements of Federal Rule of Civil Procedure 8. Rule 8(a) requires a "'short and plain statement of the claim' sufficient to notify the defendants of the allegations against them and enable them to file an answer." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Dismissal is proper "if the complaint fails to set forth 'enough facts to state a claim to relief that is plausible on its face.'" *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

To succeed on an access-to-courts claim, a plaintiff must show that he was, or is, suffering an "actual injury" by being "frustrated" or "impeded" in bringing a non-frivolous claim regarding his criminal conviction, sentence or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 353-55 (1996). Moreover, the injury must be a *specific* hinderance related to a lawsuit, *Owens v. Evans*, 878 F.3d 559, 565 (7th Cir. 2017), "such as the dismissal of a complaint or an inability to file a complaint at all," *Beese v. Todd*, 35 F. App'x 241, 243-44 (7th Cir. 2002). The injury cannot be a speculative, future harm. *Marshall v. Knight*, 445 F.3d 965, 969-70 (7th Cir. 2006). Given this standard plaintiff's allegations do not support a claim.

As an initial matter, plaintiff's allegations do not support a reasonable inference that defendant Carr was involved in the events related to plaintiff's access to the law library, so this defendant is subject to dismissal from this lawsuit for lack of personal involvement.

4

*See Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010) ("individual liability under § 1983 requires personal involvement in the alleged constitutional violation") (citation omitted). While the remaining defendants appear to have been involved in responding to plaintiff's requests for more library time, or complaints challenging his more limited access to legal resources in light of COVID restrictions on prisoner movement, his allegations do not support a constitutional claim.

Plaintiff maintains that he is not receiving meaningful access to the courts because his access to the law library is so limited, and prison officials have failed to respond to his grievances challenging the amount of time he has received. However, as the Supreme Court explained in *Lewis*, there is no "abstract, freestanding right to a law library . . . [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library . . . is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. Critically, plaintiff's allegations do not give rise to an inference that his more limited access to the law library or similar legal resources have prevented him from meaningfully participating in his post-conviction proceedings. In short, plaintiff's allegations do not suggest that the more limited law library time or access to certain library resources have actually caused him harm in any of his court proceedings. To the contrary, actually, plaintiff identifies an example in which Stanley officials actively *facilitated* his ability to access the courts, allowing him to print documents related to his petition for certiorari review. Although plaintiff remains dissatisfied and frustrated that he has less access to legal resources, he has not otherwise provided a specific example of how these limitations have thwarted his ability to litigate a nonfrivolous case, in particular his post-conviction petition.

Nor do plaintiff's allegations support an equal protection claim. To establish a prima facie case of discrimination under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must at least allege that he was: (1) "a member of a protected class"; (2) "otherwise similarly situated to members of the unprotected class"; and (3) "treated differently from members of the unprotected class." *Brown v Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (quoting *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)). Plaintiff has not alleged that he is a member of a protected class, nor that he was treated differently from members of the unprotected class. Moreover, he does not plead facts to suggest that defendants denied him more law library time in order to discriminate against him on account of race, religion, or national origin. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009). Instead, his position is that students within his institution are favored over prisoners with legal matters because students receive flash-drives and word processing programs, while he has difficulty obtaining such resources. But non-student prisoners are not a protected class, so with one possible exception, plaintiff's allegations do not support an equal protection claim.

That possible exception is if plaintiff is pursuing a "class-of-one" equal protection claim, which typically involves a public official who, "with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen." *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013) (alteration in original; internal quotation marks omitted); *see also May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000) ("In the prison context, the Equal Protection Clause of the Fourteenth Amendment requires inmates to be treated equally, unless unequal treatment bears a

6

rational relation to a legitimate penal interest."). But such claims require the plaintiff to show that defendants treated him differently from others who were similarly situated and that there was no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To state a claim in this context, plaintiff "must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 639 (7th Cir. 2007); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). Plaintiff's allegations do not rebut that presumption. Plaintiff alleges that Peterson denied his flash-drive in July 2020 because institution policy prevented him from possessing that property item because he was on TLU status, which is a completely reasonable position for prison officials to take.[2] Accordingly, plaintiff's allegations do not support an equal protection claim.

Finally, plaintiff complains in a conclusory fashion that he lacks the ability to help other prisoners with their legal matter. This claim is a complete non-starter because "inmates do not have a constitutional right to provide legal assistance to other prisoners." *Perotti v. Quinones*, 488 F. Appx 141, 146 (7th Cir. 2012) (citing *Shaw v. Murphy*, 532 U.S.

---

[2] Moreover, plaintiff's status on TLU was because of his refusal to obey COVID-19 protocols, which also undermines any "class of one" claim.

7

223, 231 (2001)).  Accordingly, as currently pled, plaintiff has failed to state a claim upon which relief can be granted.

Before dismissing this case for failure to state a claim upon which relief can be granted, however, the court will give DeGroot a brief window of time, until **[three weeks], 2021,** to submit a proposed amended complaint that corrects the deficiencies described above with respect to his proposed access to courts and equal protection claims.  DeGroot should omit his claim related to his right to represent other prisoners; instead, if he can allege in good faith that he has been actually prevented from submitting filings necessary to pursue post-conviction relief because of actions taken by Stanley officials, he should focus on those events.  DeGroot should draft his amended complaint as if he were telling a story to someone who knows nothing about the events at hand, focusing on providing a timeline of the materials events.  He should be sure to identify the specific defendants who are being sued, and the specific actions taken by each defendant that plaintiff believes violated his rights and when those events took place.  After the court receives DeGroot's proposed amended complaint in this lawsuit, the court will screen his amended complaint and determine whether this case may proceed further.

Finally, the court is denying DeGroot's motion for immediately preliminary injunctive relief.  (Dkt. #27.)  In his motion, DeGroot alleges that he has until November 5, 2021, to file a petition for review with the Wisconsin Supreme Court.  He maintains that the amount of time he receives each week in Stanley's law library -- seven 45-minute increments of time, and an additional six hours per week because he has an upcoming deadline -- is inadequate for him to prepare his position.  However, DeGroot has not

8

explained *how* the resources available to him in his cell do not equip him to prepare his petition, nor has he explained what he needs to research to prepare his petition that is unique to his petition for review. As such, the court has no basis to infer that any of the defendants are actively preventing him from accessing the court, and thus his assertions fall far short of meeting meet the prima facie requirements for a preliminary injunction. *See Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007) (in seeking a preliminary injunction, plaintiff must show (1) a likelihood of success on the merits of his case; (2) a lack of an adequate remedy at law; and (3) an irreparable harm that will result if the injunction is not granted). Accordingly, that motion will be denied as well.

ORDER

IT IS ORDERED that:

1. Plaintiff Derek DeGroot's amended complaint is DISMISSED without prejudice for failure to satisfy the requirements of Federal Rule of Civil Procedure 8.

2. Plaintiff has until **November 22, 2021**, to file an amended complaint that corrects the deficiencies described above. Plaintiff's failure to file an amended complaint by that deadline will cause this court to dismiss his claims with prejudice for failure to prosecute, pursuant to Federal Rule of Civil Procedure 41(b).

3. Plaintiff's motion for immediate preliminary injunctive relief (dkt. #27) is DENIED.

Entered this 1st day of November, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge